**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

**UNITED STATES OF AMERICA,**

**v.** **Criminal No. 3:26cr40**

**BRYAN EUGENE BROOKE,**

**Defendant.**

# MEMORANDUM OPINION

This matter comes before the Court on the United States' Motion *in Limine* (the "Motion *in Limine*" or "Motion"). (ECF No. 33.)[1] On July 21, 2026, the United States filed the Motion. (ECF No. 33.) Defendant Bryan Eugene Brooke responded, (ECF No. 38), and the United States replied, (ECF No. 42). On August 14, 2026, the Court held a hearing concerning Mr. Brooke's Motion. (ECF No. 35.) This matter is ripe for disposition. For the reasons articulated below, the Court will grant the Motion.

## I. Factual and Procedural Background

### A. Factual Findings[2]

In May 2025, the United States sent Mr. Brooke a target letter that a Grand Jury for the Eastern District of Virginia was investigating Mr. Brooke's conduct concerning his alleged distribution of child pornography in 2023. (ECF No. 38-1.) The target letter offered Mr. Brooke "the possibility of settling this matter through plea negotiations." (ECF No. 38-1, at 1.) Mr.

---

[1] The Court employs the pagination assigned by the CM/ECF docketing system.

[2] The court bases its factual determinations on the exhibits attached to the United States' Motion, (ECF Nos. 33-1, 33-2), and the exhibits attached to Mr. Brooke's response, (ECF Nos. 38-1, 38-2, 38-3). The parties did not present any other evidence at the hearing. (ECF No. 41, at 1.)

Brooke retained counsel, who entered into plea negotiations with the United States. (ECF No. 33, at 1.)[3] The parties discussed Mr. Brooke pleading guilty to a Criminal Information charging the Mr. Brooke with Distribution of Child Pornography. (ECF No. 33, at 1.)

On August 13, 2025, Mr. Brooke signed a Plea Agreement with the United States, agreeing, pursuant to Federal Rule of Criminal Procedure 11, to waive indictment and plead guilty to a single-count Criminal Information charging him with Distribution of Child Pornography, in violation of 18 U.S.C. § 2252A(a)(2)(A). (*See generally* ECF No. 33-1.) Mr. Brooke's counsel and an Assistant United States Attorney signed the Plea Agreement the same day. (ECF No. 33-1, at 12–13.) The Plea Agreement provided that it became "effective when signed by the defendant, the defendant's attorney, and an attorney for the United States." (ECF No. 33-1, at 11.) The Plea Agreement further provided that, should Mr. Brooke withdraw from the Plea Agreement, he would "waive[] any right to claim that statements made before or after the date of this agreement, including the Statement of Facts accompanying this agreement or adopted by the defendant . . . should be excluded or suppressed under Fed. R. Evid. 410 [or] Fed. R. Crim. P. 11(f)." (ECF No. 33-1, at 11.) In signing the Plea Agreement, Mr. Brooke "admit[ted] the facts set forth in the Statement of Facts filed with th[e] Plea Agreement and agree[d] that those facts establish guilt of the offense charged beyond a reasonable doubt." (ECF No. 33-1, at 2.)

On or about August 11, 2025, Mr. Brooke and his counsel signed the accompanying six page Statement of Facts electronically. (ECF No. 33, at 3.) The United States asked Mr. Brooke

[3] Mr. Brooke "agrees with the government's recitation of the circumstances that led to Mr. Brooke's signing the plea agreement and statement of facts is accurate." (ECF No. 38, at 1.) The Court relies on the facts as described by the United States in its Motion. (ECF No. 33.)

and his counsel to sign the Statement of Facts physically, and on August 15, 2025, they did so. (ECF No. 33-2, at 6.) In signing the Statement of Facts, Mr. Brooke agreed, *inter alia*, that:

- "[A]t trial, the United States would have proven the [contents of the Statement of Facts] beyond a reasonable doubt with admissible and credible evidence;"
- "This statement of facts includes those facts necessary to support the plea agreement between [Mr. Brooke] and the United States. It does not include each and every fact known to [Mr. Brooke] or to the United States, and it is not intended to be a full enumeration of all of the facts surrounding [Mr. Brooke's] case;" and,
- "The actions of [Mr. Brooke], as recounted above, were in all respects knowing and deliberate, and were not committed by mistake accident, or other innocent reason."

(ECF No. 33-2, at 1, 5–6.)

On February 2, 2026, the United States charged Mr. Brooke through a Criminal Information with one count of Distribution of Child Pornography in violation of 18 U.S.C. § 2252A(a)(2)(A). (*United States v. Brooke*, No. 26-cr-13 (MHL), ECF No. 1 (E.D. Va. Feb. 2, 2026) ("*Brooke I*")). Mr. Brooke's counsel agreed to accept service of a summons on Mr. Brooke's behalf, and the summons was returned executed on February 4, 2026. (ECF Nos. 4, 5.) The Court scheduled an initial appearance and arraignment—which was to have been a guilty plea—for Mr. Brooke for March 3, 2026. (*See* 02/04/26 and 02/06/26 Minute Entries (setting hearing dates).)

On March 3, 2026, Mr. Brooke did not appear at these hearings. (ECF No. 7.) On March 6, 2026, the United States moved to dismiss its Criminal Information, explaining that the United States "learned since the filing of the Criminal Information that [Mr. Brooke] no longer intend[ed] to enter a guilty plea to this charge . . . [meaning] prosecution of this matter via criminal information [was] not viable." (ECF No. 9, at 1.) This Court granted the United States' motion to dismiss. (ECF No. 10.)

On March 6, 2026, the United States charged Mr. Brooke in the present matter through a Criminal Complaint with one count of Distribution of Child Pornography in in violation of 18 U.S.C. § 2252A(a)(2)(A). (ECF No. 3.) On April 7, 2026, a Grand Jury for the Eastern District of Virginia returned a one-Count Indictment charging Mr. Brooke with one Count of Distribution of Child Pornography in violation of 18 U.S.C. § 2252A(a)(2)(A). (ECF No. 8.) On April 22, 2026, Mr. Brooke appeared before United States Magistrate Judge Mark R. Colombell for an initial appearance and detention hearing. (ECF No. 15.) On April 30, 2026, Mr. Brooke appeared before this Court for an arraignment, and the Court scheduled this matter for trial beginning August 3, 2026. (ECF No. 19.)

### B. Procedural Background

On June 9, 2026, Mr. Brooke moved to continue the trial date. (ECF No. 24.) On June 18, 2026, the Court held a status conference on the motion to continue. (ECF No. 26.) During that hearing, the parties explained that given the voluminous discovery in this matter, they were not yet sure which date would be appropriate for trial. Accordingly, the Court took the motion to continue under advisement and set another status conference for July 7, 2026. (ECF No. 27.)

During the July 7, 2026 status conference, the Court scheduled trial to begin December 1, 2026, declared this matter complex within the meaning of the Speedy Trial Act,[4] and scheduled a motions hearing for August 14, 2026. (ECF Nos. 29, 30, 31, 32.)

---

[4] The Speedy Trial Act, which can be found at 18 U.S.C. § 3161, requires that the Court commence trial within seventy days of filing date of the indictment or the defendant's initial appearance, whichever occur later. § 3161(c)(1). However, § 3161(h) provides, in relevant part, that:

> (h) The following periods of delay shall be excluded . . . in computing the time within which the trial of any such offense must commence:

On July 21, 2026, the United States filed the instant Motion. (ECF No. 33). Mr. Brooke responded, (ECF No. 38), and the United States replied, (ECF No. 42). On August 14, 2026, the Court held a hearing on the Motion. (ECF No. 35.) In the Motion, the United States seeks to admit into evidence (1) the Statement of Facts Mr. Brooke signed before refusing to enter a formal plea of guilty and (2) evidence of Mr. Brooke's failure to appear at a previously-scheduled plea hearing.

## II. Standards of Review

### A. Waivers of Protections under Federal Rule of Criminal Procedure 11(f) and Federal Rule of Evidence 410

Federal Rule of Evidence 410 generally bars the admission into evidence of "statement[s] made during plea discussions with an attorney for the prosecuting authority if the discussions did not result in a guilty plea or they resulted in a later-withdrawn guilty plea." Fed. R. Evid.

---

* * *

(7)

> (A) Any period of delay resulting from a continuance granted . . . on the basis . . . that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial. . . .
>
> (B) The factors, among others, which a judge shall consider in determining whether to grant a continuance under subparagraph (A) of this paragraph in any case are as follows:
>
> > * * *
> >
> > (ii) Whether the case is so unusual or so complex, due to the number of defendants, the nature of the prosecution, or the existence of novel questions of fact or law, that it is unreasonable to expect adequate preparation for pretrial proceedings or for the trial itself within the time limits established by this section.

§§ 3161(h)(7)(A)–(B).

410(a)(4).[5] Similarly, Federal Rule of Criminal Procedure 11(f) provides that "[t]he admissibility or inadmissibility of a plea, a plea discussion, and any related statement is governed by Federal Rule of Evidence 410." Fed. R. Crim. P. 11(f). "[A]bsent some affirmative indication that the agreement was entered into unknowingly or involuntarily, an agreement to waive the exclusionary provisions of the plea-statement Rules is valid and enforceable." *United States v. Mezzanatto*, 513 U.S. 196, 210 (1995). "This is so even if the guilty plea is ultimately not entered or later withdrawn." *United States v. Akhter*, No. 1:25-cr-307 (RDA), 2026 WL 1195196, at *3 (E.D. Va. May 1, 2026) (collecting cases). "Thus, to the extent that the Plea Agreement was knowingly and voluntarily entered, [a] [d]efendant's reliance on Rule 11(f) and Rule 410" to bar the admission of a signed statement of facts "is inapposite, where he [or she] explicitly waived the protection of those provisions." *Id.* Accordingly, in determining whether the United States may admit evidence of a defendant's statements during plea negotiations through that defendant's waiver of the protections of Rules 11(f) and 410, the Court must determine whether that waiver was knowing and voluntary. If a defendant engaged in a proper waiver of the protections of Rule 11(f) and Rule 410, the Court must determine whether the

---

[5] Federal Rule of Evidence 410(a)(4) provides:

> (a) Prohibited Uses. In a civil or criminal case, evidence of the following is not admissible against the defendant who made the plea or participated in the plea discussions:
>
> * * *
>
> (4) a statement made during plea discussions with an attorney for the prosecuting authority if the discussions did not result in a guilty plea or they resulted in a later-withdrawn guilty plea.

Fed. R. Evid. 410.

defendant breached the terms of the plea agreement in which that waiver occurred. *Id.* at *5 (examining whether defendant breached plea agreement before allowing United States to admit evidence of statements otherwise barred by Rule 11(f) and Rule 410).

### B. Admission of Evidence of a Defendant's Failure to Appear Under Federal Rule of Evidence 404(b)

Federal Rule of Evidence 404(b) provides that "[e]vidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1).[6] However, this evidence "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid.

---

[6] Federal Rule of Evidence 404 provides:

(b) Other Crimes, Wrongs, or Acts.

> (1) Prohibited Uses. Evidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.
>
> (2) Permitted Uses. This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.
>
> (3) Notice in a Criminal Case. In a criminal case, the prosecutor must:
>
> > (A) provide reasonable notice of any such evidence that the prosecutor intends to offer at trial, so that the defendant has a fair opportunity to meet it;
> >
> > (B) articulate in the notice the permitted purpose for which the prosecutor intends to offer the evidence and the reasoning that supports the purpose; and
> >
> > (C) do so in writing before trial — or in any form during trial if the court, for good cause, excuses lack of pretrial notice.

Fed. R. Evid. 404(b).

404(b)(2). The United States Court of Appeals for the Fourth Circuit has "articulated a four-prong test of admissibility for prior-act evidence":

> (1) the prior-act evidence must be relevant to an issue other than character, such as intent; (2) it must be necessary to prove an element of the crime charged; (3) it must be reliable; and (4) as required by Federal Rule of Evidence 403, its probative value must not be substantially outweighed by its prejudicial nature.

*United States v. Queen*, 132 F.3d 991, 997 (4th Cir. 1997) (citations omitted). "Because the rule recognizes the admissibility of prior crimes, wrongs, or acts, with only one stated exception, it understood to be a rule of inclusion." *Id.* at 994 (citations omitted).

To the extent that the United States seeks to admit evidence of a defendant's flight or failure to appear under Rule 404(b) as evidence of consciousness of guilt, it must present "evidence supporting all the inferences in the causative chain between flight and guilt." *United States v. Obi*, 239 F.3d 662, 665 (4th Cir. 2001). This "causal chain" requires evidence "that supports inferences that (1) the defendant's flight was the product of consciousness of guilt, and (2) his [or her] consciousness of guilt was in relation to the crime with which he was ultimately charged and on which the evidence is offered." *Id.*

## **III. Analysis**

The United States seeks to admit into evidence (1) Mr. Brooke's previously-signed Statement of Facts and (2) evidence of Mr. Brooke's failure to appear at his previously-scheduled plea hearing. (ECF No. 33, at 4–13.) According to the United States, Mr. Brooke agreed in his Plea Agreement to waive the protections of Rule 11(f) and Rule 410, thereby allowing the United States to admit into evidence his Statement of Facts. The United States further asserts that evidence of Mr. Brooke's failure to appear is not barred by Rule 404(b). Mr. Brooke contests both aspects of the Motion. Mr. Brooke counters that his waiver of the protections of Rule 11(f) and Rule 410 never went into effect because this Court never accepted

his plea. And Mr. Brooke asserts that evidence of his failure to appear is irrelevant given his absolute right to proceed to trial by way of an indictment instead of a criminal information. (ECF No. 38, at 4–13.)

The Court will grant the Motion on both grounds. Caselaw makes clear that Mr. Brooke's Plea Agreement and its attendant waiver went into effect upon the parties' signatures on that document, and that Mr. Brooke's waiver was knowing and voluntary. Moreover, evidence of Mr. Brooke's failure to appear is probative of his consciousness of guilt, rendering it admissible under Rule 404(b). Accordingly, the Court will permit the United States to enter into evidence Mr. Brooke's Statement of Facts and evidence of his failure to appear.

### A. The Court Will Grant the Motion and Allow the United States to Introduce Evidence of Mr. Brooke's Previously-Signed Statement of Facts

The United States first moves to enter into evidence Mr. Brooke's previously-signed Statement of Facts. According to the United States, Mr. Brooke's Plea Agreement, which incorporates the Statement of Facts, became effective upon the parties' signatures, including Mr. Brooke's waiver of his protections under Rule 11(f) and Rule 410. Mr. Brooke responds that his Plea Agreement and its attendant waiver would have become operative only if this Court had accepted his plea.

Mr. Brooke's Plea Agreement *did* become operative upon the parties' signatures, meaning his waiver of his protections under Rule 11(f) and Rule 410 likewise became binding. Accordingly, the Court will grant the Motion.

#### 1. Mr. Brooke's Waiver of the Protections of Rule 11(f) and Rule 410 Went Into Effect Upon His Signing the Plea Agreement

As a threshold matter, Mr. Brooke contends that his signing the Plea Agreement alone did not render the Plea Agreement effective. According to Mr. Brooke, a district court "must accept

the plea agreement . . . before it can go into effect." (ECF No. 38, at 5 (quoting *Hunter v. United States*, 146 S. Ct. 1702, 1712 (2026)).) Federal Rule of Criminal Procedure 11 governs the Court's involvement in plea agreements. Specifically, if a defendant signs a plea agreement under Rules 11(c)(1)(A) or (C), "the court may accept the agreement, reject it, or defer a decision until the court has reviewed the presentence report." Fed. R. Crim. P. 11(c)(3)(A). Rule 11(c)(1)(A), in turn, provides that a plea agreement "may specify that an attorney for the government will . . . not bring, or will move to dismiss, other charges." Fed. R. Crim. P. 11(c)(1)(A). Mr. Brooke's Plea Agreement was governed by Rule 11(c)(1)(A). (*See* ECF No. 33-1, at 4 ("The United States will not further criminally prosecute the defendant in the Eastern District of Virginia for the specific conduct described in the [Criminal] Information or Statement of Facts.").) Accordingly, Mr. Brooke argues that in order for the Plea Agreement and its attendant waiver to be effective, the Court must accept it first under Rule 11(c)(3)(A). (ECF No. 38, at 9–11.) He is incorrect.

#### a. Caselaw Supports the Conclusion that Mr. Brooke's Waiver Was Effective at the Time He Signed the Plea Agreement

The United States Supreme Court has explained that "absent some affirmative indication that the agreement [to waive the protections of Rule 11(f) and Rule 410] was entered into unknowingly or involuntarily, an agreement to waive the exclusionary provisions of the plea-statement Rules is valid and enforceable." *Mezzanatto*, 513 U.S. at 210. *Mezzanatto* is distinguishable on two important grounds. First, the *Mezzanatto* court addressed a pretrial *proffer* during which a defendant agreed to waive the protections of the plea-statement rules,

rather than a *plea agreement* containing a waiver provision. *Id.* at 198.[7] Second, *Mezzanatto* concerned the waiver of the plea-statement rules for *impeachment* purposes. *Id.*

But neither distinction changes the Supreme Court's clear statement that these rules are subject to knowing and voluntary waivers. And even where the Supreme Court did not consider waiver of the plea-statement rules through a plea agreement, district courts have. Indeed, courts in this District have routinely enforced plea agreements even prior to their acceptance by a district court. *See Akhter*, 2026 WL 1195196, at *3–5 (enforcing plea agreement waiving plea-statement-rule protections "even if the guilty plea is ultimately not entered or later withdrawn"); *United States v. Tucker*, No. 2:09-cr-182 (AWA), 2012 WL 12973520, at *2 (E.D. Va. Aug. 6, 2012) (citing *Mezzanatto* and enforcing plea-statement-rule waiver even where "the Court did not accept Tucker's plea" because the plea agreement "state[d] that it became effective when signed by the defendant") (quotation omitted); *United States v. Alazzam*, No. 1:08-cr-101 (JCC), 2009 WL 3245392, at *3 (E.D. Va. Sept. 29, 2009) (concluding that *Mezzanatto* does not bar plea agreements that contain waive the plea-statement rules and allow the *substantive* admission of plea-negotiation statements)[8]; *United States v. El-Amin*, 268 F. Supp. 2d 639, 642 (E.D. Va.

---

[7] To be sure, the *Mezzanatto* court determined that "there may be some evidentiary provisions that are so fundamental to the reliability of the factfinding process that they may never be waived without irreparably discrediting the federal courts." 513 U.S. at 204 (alterations and quotations omitted). And *Mezzanatto* made clear that "the admission of plea statements *for impeachment purposes*" would not "have that effect." *Id.* (emphasis added). The Court could read *Mezzanatto* to stand for the limited proposition that admission of statements made during plea negotiations for *impeachment* purposes does not "discredit the federal courts," but that *substantive admission* of these statements is too discrediting. But Mr. Brooke offers no authority to support such a determination, and the authority identified by the Court finds otherwise.

[8] *Alazzam* concerned materially different circumstances from those at bar. There, the defendant entered a guilty plea before the district court, which it accepted. The defendant then moved to withdraw that agreement. 2009 WL 3245392, at *1. The Court relies upon *Alazzam* because the *Alazzam* court concluded that *Mezzanatto's* clear statement that defendants may engage in knowing and voluntary waivers of Rule 11(f) and Rule 410 applies to the *substantive*

2009) (determining waiver of plea-statement-rule protections was knowing and voluntary even when defendant signed plea agreement but failed to enter a guilty plea). These courts have enforced these agreements, even prior to a court's acceptance of a formal plea, because plea agreements "are governed by contract law principles. Thus, the parties to the plea agreement should receive the benefit of their bargain." *Alazzam*, 2009 WL 3245392, at *3. The same is true here.

Moreover, while Mr. Brooke insists that the Fourth Circuit has not addressed the intersection of written waivers of the plea-statement rules and Rule 11(c)'s requirement that a court accept a guilty plea, the United States correctly points out that the Fourth Circuit has considered similar circumstances. Albeit in an unpublished decision, in *United States v. Davis*, the Fourth Circuit considered a defendant's challenge to his alleged waiver in his plea agreement of his Rule 11(f) and Rule 410 protections where "he did not follow through with his guilty plea." 166 F. App'x 70, 73 (4th Cir. 2006). Citing *Mezzanatto*, the Fourth Circuit concluded that "pursuant to the explicit terms of the agreement, the waiver agreement *became effective upon the signatures of the parties* and was not contingent on Davis' ultimate acceptance of the plea arrangement." *Id.* (emphasis added). So too here.

#### b. Mr. Brooke's Reliance on *United States v. Puig-Valdes* Is Inapposite

In response, Mr. Brooke relies on the United States Court of Appeals for the Ninth Circuit's decision in *United States v. Puig-Valdes*. (ECF No. 38, at 7–9 (citing 138 F.4th 1231 (9th Cir. 2025)).) Because the terms articulated in the *Puig-Valdes* defendant's plea materially differ from those here, the case is inapposite. In *Puig-Valdes*, the Ninth Circuit concluded that

---

use of plea-negotiation statements, not just the use of those statements for impeachment. *Id.* at *3.

while the defendant's waiver of the plea-statement rules in his plea agreement provided that it became effective upon the signature of the parties, the *Puig-Valdes* court refused to enforce that waiver until the district court accepted the plea. *Puig-Valdes*, 138 F.4th at 1241–43. But as the United States correctly notes, (ECF No. 42, at 4–5), *Puig-Valdes* is factually distinguishable. The defendant in *Puig-Valdes* signed a plea agreement that provided for a waiver of the plea-statement rules only "[f]ollowing *the Court's finding of a knowing breach* of th[e] agreement by defendant." *Puig-Valdes*, 138 F.4th at 1235–36 (quotation omitted) (emphasis added). That is, the agreement in *Puig-Valdes* had as its triggering condition the district court's involvement *before* finding waiver.

Mr. Brooke's Plea Agreement, in contrast, triggered his waiver of the plea-statement rules at the point that "the defendant withdraws from th[e] agreement." (ECF No. 33-1, at 11.) To be sure, Mr. Brooke's Plea Agreement also provides that "[a]ny alleged breach of th[e] agreement . . . shall be determined by the Court." (ECF No. 33-1, at 12.) But this Court's involvement is not the *triggering* condition for Mr. Brooke's waiver. Rather, this Court's involvement occurs only *after* that waiver is triggered by a withdrawal from the agreement. In this regard, *Puig-Valdes* is distinguishable from the present case in a material fashion.

Because caselaw of the Supreme Court, the Fourth Circuit, and courts in this District uniformly support the enforcement of a plea agreement even prior to a court's acceptance of a guilty plea, the Court turns to whether Mr. Brooke's Plea Agreement was knowing and voluntary.

### 2. Mr. Brooke's Waiver of the Protections of Rule 11(f) and Rule 410 Was Knowing and Voluntary

The record supports the conclusion that Mr. Brooke's waiver of the protections of Rule 11(f) and Rule 410 was knowing and voluntary. In Mr. Brooke's signed Plea Agreement, his

signature falls directly below a statement that says:

> I hereby agree that I have consulted with my attorney and fully understand all rights with respect to the pending criminal Information. Further, I fully understand all rights with respect to 18 U.S.C. § 3553 and the provisions of the Sentencing Guidelines Manual that may apply in my case. I have read this Plea Agreement and carefully reviewed every part of it with my attorney. I understand this agreement and voluntarily agree to it.

(ECF No. 33-1, at 13.) Mr. Brooke's counsel also signed the Plea Agreement as an officer of the Court. (ECF No. 33-1, at 13.)

Mr. Brooke nonetheless counters that the Court cannot conclude that he entered into the Plea Agreement voluntarily without first accepting his guilty plea and conducting a plea colloquy to determine whether Mr. Brooke entered into the agreement voluntarily. (ECF No. 38, at 10.) But the binding caselaw before this Court finds otherwise based on a plain reading of the agreement: a defendant may enter into an agreement that itself demonstrates a knowing and voluntary waiver of his rights. On the present record, and given Mr. Brooke's clear written statements that he knew of—and voluntarily waived—his rights, the Court concludes that Mr. Brooke engaged in a knowing and voluntary waiver of the protections of Rule 11(f) and Rule 410.

### 3. <u>Mr. Brooke Breached the Terms of the Plea Agreement</u>

Mr. Brooke breached the terms of his Plea Agreement. "[T]he party alleging a breach" of a plea agreement "ha[s] the burden of proving, by a preponderance of the evidence" that a breach occurred." *United States v. Conner*, 930 F.2d 1073, 1076 (4th Cir. 1991). The United States has proved by a preponderance of the evidence that Mr. Brooke breached the terms of his Plea Agreement. Because Mr. Brooke agreed to plead guilty, then refused to do so, he breached his Plea Agreement.

#### 4. The Statement of Facts is Admissible

Next, because Mr. Brooke breached the terms of his Plea Agreement, his waiver of the protections of Rule 11(e) and Rule 410 is effective. In his waiver in the Plea Agreement, Mr. Brooke acknowledged, if he breached the Plea Agreement, he "waives any right to claim that statements made before or after the date of this agreement, *including the Statement of Facts* accompanying this agreement . . . should be excluded or suppressed under Fed. R. Evid. 410, Fed. R. 11(f), the Sentencing Guidelines, or any other provision of the Constitution or federal law." (ECF No. 33-1, at 11–12.) Accordingly, the Statement of Facts is admissible. (ECF No. 33-2.)

In conclusion, the Court will grant the Motion and allow the United States to admit evidence of Mr. Brooke's Statement of Facts. The Court need not accept a guilty plea by Mr. Brooke first before allowing for the substantive admission of the Statement of Facts. Mr. Brooke's waiver of the plea-statement rules in his Plea Agreement was effective upon the parties' signatures, his waiver was knowing and voluntary, and he breached the Plea Agreement. The Court will therefore grant the Motion.

### B. The Court Will Grant the Motion and Allow the United States to Introduce Evidence of Mr. Brooke's Failure to Appear

The United States seeks to admit at trial evidence of Mr. Brooke's failure to appear at his previously-scheduled plea hearing. (ECF No. 33, at 9–13.) According to the United States, this evidence passes Rule 404(b)'s bar on character evidence because it pertains to Mr. Brooke's consciousness of guilt, *not* his propensity to act in conformity with his failure to appear. (ECF No. 33, at 9.) Mr. Brooke responds that admission into evidence of his failure to appear would be inappropriate because that evidence would be irrelevant and overly prejudicial. (ECF No. 38, at 11–14.)

The Court will grant the Motion and allow the United States to admit evidence of Mr. Brooke's failure to appear as evidence of his consciousness of guilt because (1) this evidence survives the Fourth Circuit's test of admissibility under Rule 404(b); (2) sufficient support exists on the record to draw a causal chain between Mr. Brooke's failure to appear and his consciousness of guilt; and, (3) this evidence is both highly relevant and insufficiently prejudicial to bar its admission.

### 1. Evidence of Mr. Brooke's Failure to Appear Does Not Violate Rule 404(b)

Evidence of Mr. Brooke's failure to appear satisfies each prong of the Fourth Circuit's test for whether evidence is admissible under Rule 404(b). *Queen*, 132 F.3d at 997. First, the evidence is highly relevant, in that it supports Mr. Brooke's consciousness of guilt. Second, the evidence is "probative of an essential claim or an element of the offense."[9] *Id.* Again, because the United States seeks to admit the evidence of Mr. Brooke's failure to appear as it pertains to his consciousness of guilt, this evidence would be probative of Mr. Brooke's *mens rea*. *See* 18 U.S.C. § 2252A(a)(2)(A) (prohibiting the "knowing" distribution of child pornography). Third, the evidence is reliable, as the United States proffers that it would admit evidence of Mr. Brooke's Statement of Facts, orders of this Court scheduling his hearing, and corroborative testimony. (ECF No. 33, at 12.) Finally, while evidence of Mr. Brooke's failure to appear would be prejudicial, it would not be *unfairly* so, as required by Rule 403. Because this evidence

[9] The *Queen* test asks whether the proposed evidence is "necessary" to prove an element of the crime charged. 132 F.3d at 997. But evidence proposed as admissible under Rule 404(b) need not be strictly "necessary" to prove the offense. *United States v. Rooks*, 596 F.3d 204, 211 (4th Cir. 2010) ("That the evidence was not critical to the prosecution's case against Rooks does not render it unnecessary for purposes of Rule 404(b), as *Queen's* second prong focuses on whether the evidence is necessary 'in the sense that it is probative of an essential claim or an element of the offense.'") (quoting *Queen*, 132 F.3d at 997).

pertains to Mr. Brooke's consciousness of guilt, its probative value would not be "substantially outweighed" by the danger of unfair prejudice. Fed. R. Evid. 403. Accordingly, evidence of Mr. Brooke's failure to appear would not violate Rule 404(b).

#### 2. **Evidence of Mr. Brooke's Failure to Appear Supports a Causal Chain Between His Failure to Appear and His Consciousness of Guilt**

The United States must also demonstrate a "causal chain" of evidence "that supports inferences that (1) the defendant's flight was the product of consciousness of guilt, and (2) his [or her] consciousness of guilt was in relation to the crime with which he was ultimately charged and on which the evidence is offered." *Obi*, 239 F.3d at 665. The record supports both inferences. Mr. Brooke understood the charges against him and, by signing the Plea Agreement and the Statement of Facts, he acted upon his understanding of the charges knowingly and voluntarily. He was aware of the date of his plea hearing and did not appear. On this record, the Court concludes that the causal chain supports admission of evidence of Mr. Brooke's failure to appear under Rule 404(b).

#### 3. **The Record Does Not Support Mr. Brooke's Assertion that Evidence of His Failure to Appear is Irrelevant**

Mr. Brooke responds that evidence of his failure to appear fails the *Queen* test because he maintained an absolute right not to plead guilty. When Mr. Brooke signed his Plea Agreement, he had only been charged by way of a Criminal Information. As a result, "even if Mr. Brooke had appeared, the only means by which either hearing could have proceeded was with Mr. Brooke's express waiver of indictment in open court." (ECF No. 38, at 12.) Because he had not yet been indicted, "[h]ad Mr. Brooke appeared and simply indicated that he was not waiving indictment, he would have been free to leave the courthouse and go about his business until the government charged him via other means (as the government ultimately did here)." (ECF No.

38, at 12.) Given Mr. Brooke's right to refuse to waive his right to be indicted, "no adverse inference could have been drawn from the exercise of those rights." (ECF No. 38, at 13.) To summarize, Mr. Brooke contends that his failure to appear was not motivated by consciousness of guilt but rather by his "simply exercising the rights afforded to him under the Constitution and the Federal Rules of Criminal Procedure." (ECF No. 38, at 13.)

The Court disagrees. While Mr. Brooke does maintain an absolute right to decide whether to proceed without an indictment, that fact does not alter the causal chain established by the record. That Mr. Brooke could have refused to proceed with the charges brought by Criminal Information *at the hearing* does not bear on the inference resultant from his *refusal to attend that hearing*. Accordingly, the Court will grant the Motion and permit the United States to admit into evidence Mr. Brooke's failure to appear.

## IV. Conclusion

For the reasons articulated above, the Court will grant the Motion and allow the United States to admit into evidence (1) Mr. Brooke's previously-signed Statement of Facts and (2) evidence of his failure to appear at his previously-scheduled plea hearing.

An appropriate Order shall issue.

/s/ MHL

Date: 10/26/26
Richmond, Virginia

M. Hannah Lauck
Chief United States District Judge